AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of South Carolina

| | |
|---|---|
| United States of America <br> v. <br> Daniel Brendan Kurt CLARKE-POUNDER <br> *Defendant(s)* | Case No. 2:25-mj-11 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __March 7, 2025__ in the county of __Charleston__ in the District of __South Carolina__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. Section 844 (i) | Arson of Property in Interstate Commerce. |

This criminal complaint is based on these facts:

See Attached.

☑ Continued on the attached sheet.

JORDAN GRIFFIN
Digitally signed by JORDAN GRIFFIN
Date: 2025.03.14 11:53:04 -04'00'

*Complainant's signature*

Jordan Griffin, ATF-Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 03/14/2025

*Judge's signature*

City and state: Charleston, SC     Mary Gordon Baker, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>Daniel Brendan Kurt Clarke-Pounder,<br><br>Defendant. | Criminal No.:  2:25-mj-11 |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR
A CRIMINAL COMPLAINT**

I, Jordan T. Griffin, a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, Title 21, and Title 26, United States Code.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been since November 05, 2023. I have graduated from the Criminal Investigator Training Program and the ATF Special Agent Basic Training program. As an ATF Special Agent, I have received specialized training and have participated in various types of investigative activity including, but not limited to, the following: (a) physical and technical surveillance; (b) the debriefing of defendants, witnesses, informants and other individuals who have knowledge concerning violations of federal firearms laws; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; (f) court authorized interception of both wire and electronic communications (i.e., Title III wiretaps);

and (g) the handling and maintenance of evidence. Prior to my tenure as a Special Agent, I received a bachelor's degree in criminal justice and criminology from Metropolitan State University in Denver, Colorado. I was then employed by the Arvada Police Department in Arvada, Colorado for seven (7) years where I worked as a patrol officer. While at Arvada Police Department, I conducted numerous investigations on a variety of different types of cases. I was also a part of the Special Weapons and Tactics Team ("SWAT") for approximately three (3) years. I am currently assigned to the ATF Charleston Field Office and am vested with the authority to investigate violations of federal law, to include violations of Title 18, Title 21, and Title 26 of the United States Code.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, officers, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

4. Since this Affidavit is submitted for the sole purpose of establishing probable cause to support the issuance of a complaint and arrest warrant, I have not included each and every fact known by the government concerning criminal activities committed by the defendant. I have set forth only those facts that I believe are necessary to establish probable cause to believe that **Daniel Brendan Kurt CLARKE-POUNDER** (hereinafter, "**CLARKE-POUNDER**") violated Title 18 U.S.C. § 844(i) (Arson of Property in Interstate Commerce).

### INVESTIGATION BACKGROUND AND SUMMARY OF PROBABLE CAUSE

**I.     THE ARSON**

5. On March 7, 2025, at approximately 7:16 P.M., North Charleston Police Department ("NCPD") and North Charleston Fire Department ("NCFD") responded to the Mellow Mushroom restaurant located at 4855 Tanger Outlet Blvd, North Charleston, within the State and

Page **2** of **16**

Judicial District of South Carolina, for a report of a suspected arson. Witnesses were located on scene and advised that a male used red spray paint to write "Fuck Trump" and "Long Live Ukraine" in a Tesla charging station parking spot. The male then began doing something with beer bottles. The male then began to light the bottles on fire and throw them at the Tesla charging stations. The male then fled on foot towards the Zaxby's restaurant, which is located at 4845 Tanger Outlet Blvd, North Charleston, SC 29418. The witnesses described the suspect as a white male, wearing a grey jacket or hooded sweatshirt, and a black facemask.

6.      On March 8, 2025, I and ATF Certified Fire Investigator ("CFI") SA Black responded to the incident location for further investigation. SA Black collected evidence from the scene to include; a partially charred piece of fabric (a suspected wick) and shards of glass bottles (brand name Holland 1839). SA Black advised that the items collected as evidence were consistent with components of a homemade incendiary and/or destructive device (a/k/a "Molotov cocktail") as illustrated by the following photographs:[1].

 

---

[1] From training and experience as an ATF SA, I know that a "Molotov Cocktail" is considered a destructive device and is therefore a firearm regulated under the National Firearms Act ("NFA") of 1934. Furthermore, I know that destructive devices classified under the NFA, must be property registered with ATF in the National Firearms Registration and Transfer Record ("NFRTR").



7.  I reviewed surveillance video of the incident from Zaxby's. In the footage, I observed a white male wearing a grey sweater, black facemask, black shorts, and black shoes walking southeast from the east side of Zaxby's. The male walked to an electrical box located on the southeast corner of the parking lot. He then walked west though the parking lot to the Tesla charging stations. It appeared the male looked at the Tesla charging stations, then walked back to the corner of the parking lot, where he stopped and waited. During that time, he bent down and was hidden from camera view for a few moments. When he reappeared on camera, he next walked over to a Tesla charging station parking spot and bent down in the same area that the spray-painted words were located. The male was again hidden from the camera's view due to a vehicle blocking the camera angle. However, he then stood up and walked to the other side of the Tesla charging

station. As he was standing there, the footage shows something lighting on fire in front of him. He then made a throwing motion, and the flames follow his arm backwards and forwards. I then observed flames on the ground where the male was standing:



8. As I continued to review the footage, I then observed five (5) more throwing motions with flames appearing at the end of each motion. When the fire started to spread, several of the electric vehicles parked at the charging station fled. The footage then shows the male running back towards Zaxby's where he can be observed wearing blue gloves and holding a green item in his right hand. He then ran northwest on the east side of Zaxby's where he disappeared from the camera view.

9. As part of ATF's investigation following the incident, I documented that the male's actions had caused several of the Tesla charging stations to catch fire:

10.  I next reviewed a NCPD surveillance video, which showed the male running northwest across Tanger Outlet Blvd towards the Tanger Outlet mall. In this footage, the male no longer had the green item in his hands that was previously observed on the Zaxby's surveillance footage. It should be noted that the green item, was later located and recovered as evidence next to trees on the north side of Zaxby's. The green item, a picture of which is provided above, was identified as a cardboard bottle carrier, with the brand name of Holland 1839. This was consistent with the brand on the shards of glass bottles located on scene at the Tesla charging station. A picture of these shards is provided above. Further review of the NCPD footage showed the male getting into an older model white van and exiting the Tanger Outlet mall and heading south on Tanger Outlet Blvd.

11.     I contacted the Tanger Mall security consultants, who advised they had access to a License Plate Reader ("LPR") camera in the immediate vicinity of the incident location. Upon review of the LPR camera footage, I observed the subject's vehicle, which is described as a white van, and the location of the van was parked. The LPR camera was utilized and identified a white 2006 Chrysler Town and Country van bearing South Carolina license plate 331ANL (hereinafter, the "Chrysler"):

Date: 3/10/2025 12:48:54 PM

Number of query results returned: 2

ALPR units - Patrollers: CHARLESTON

Event timestamp: Between 3/7/2025 12:00:00 AM and 3/7/2025 11:59:59 PM

License plates: 331ANL

| Plate read | Plate image | Context image | Address | Patroller | ALPR unit |
|---|---|---|---|---|---|
| 331ANL | 331 ANL | [image] | | | CHARLESTON - West Entry 02 |
| 331ANL | 331 ANL | [image] | | | CHARLESTON - West Exit |

12.     I conducted a query of the South Carolina Department of Motor Vehicles ("SCDMV") and discovered that the Chrysler was registered to **CLARKE-POUNDER** ▮

13.     I then conducted a query of the SCDMV and obtained a driver record report for **CLARKE-POUNDER** with the same registered address.

14.  I then reviewed NCPD surveillance video prior to and after the incident which showed the following on March 7, 2025[2]:

- **5:51 pm** – The Chrysler pulls into the Tanger parking lot and parks.

- **5:59 pm** – A white male subject is seen leaning inside of the door of the Chrysler. He then stands up and brings his arm down toward the ground. He leaves his arm pointing towards the ground for multiple seconds.

- **6:10** – The white male subject is then seen leaving the Chrysler and walking back towards the Tanger Outlet Mall.

- **6:50 pm** – The white male subject is seen approaching Tanger Outlet Blvd from the van in the parking lot carrying an object, which is consistent to the way a person would carry a six pack of bottles. The white male subject is also observed wearing blue gloves:



- **7:14 pm** – The white male subject is then seen running across Tanger Outlet Blvd into the Tanger Outlet mall parking lot. The white male subject is still wearing blue gloves:

---

[2] All times referenced are to be considered approximate.

Page **8** of **16**



- **7:15 pm** – The Chrysler then exits the Tanger Outlet Mall parking lot traveling onto Tanger Outlet Blvd.

15. After observing the white male subject on the surveillance video walking towards the Tanger Outlet Mall, I contacted Tanger Outlet Mall security consultants, who were able to obtain a photograph of the male without a mask on from their surveillance cameras:[3]



---

[3] The male went in and out of the Crysler multiple times, during which he changed into a different sweatshirt prior to the incident.

Page **9** of **16**

## II. LOCATING AND IDENTIFYING CLARKE-POUNDER

16. I utilized open-source social media posts as well as other sources to obtained photographs of **CLARKE-POUNDER**. I was able to determine the white male subject in the surveillance obtained by Tanger Mall security consultants was similar in features and characteristics to the other photographs obtained of **CLARKE-POUNDER**.

17. I obtained a phone number for **CLARKE-POUNDER**, which was ▬▬▬▬. I found that this phone number was currently registered to the cellular provider of Verizon Wireless.

18. I also conducted an open-source query of a mobile payment application for the above listed number associated with **CLARKE-POUNDER**. I learned that there was an account associated with that phone number with a username of "Daniel Clarke-Pounder." Based on this discovery, I then conducted an open-source query of another mobile payment application for the name "Daniel Clarke-Pounder" and located an account associated with that exact name. I reviewed the payments listed in the account, which were publicly available, and identified several payments referencing **CLARKE-POUNDER**'s rent. Based on my review of these payments, I was able to identify **CLARKE-POUNDER**'s suspected residence as ▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬ (hereinafter, the "Apartment"). To confirm this address, I also conducted an open-source query of **CLARKE-POUNDER**'s Instagram. There, I located a photograph of **CLARKE-POUNDER** with the caption "Haven't posted in 3 years whoops. Well I'm a mechanic now, I live on James island with two of the best roommates and I'm enjoying life see yall in another 5 years".

## III. SURVEILLANCE OF THE APARTMENT AND DISCOVERY OF THE CHRYSLER

19. On the morning of March 13, 2025, at approximately 6:00 A.M., ATF SAs

conducted surveillance on the Apartment. There SAs discovered the Chrysler parked in the space in front of Apartment ▆▆▆: During their surveillance, SAs observed **CLARKE-POUNDER** exiting the building where the Apartment is located and observed him walking towards and later driving the Chrysler.




### IV.   THE SEARCH OF THE CHRYSLER AND APARTMENT

20.     Based on both the ATF's investigation and the SAs surveillance, I pursued federal search warrants for both **CLARKE-POUNDER**'s residence and vehicle, and I applied for the warrants on the afternoon of March 13, 2025. These warrants were issued by the Court and executed at approximately 6:20 pm.

21.     After the search warrants were issued by the Court, SAs who were maintaining visual surveillance on **CLARKE-POUNDER** and the Chrysler, followed him from ▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆ to the Apartment. **CLARKE-POUNDER** reversed into a parking spot in front of the Apartment, where SAs detained him and executed the search of the vehicle.

22.     During the search of the Chrysler, SAs located approximately four (4) white strips of torn cloth in the rear cargo area. These strips of cloth are consistent with NCPD surveillance footage of the male carrying beer bottles with white clothing protruding from the bottles.



23.     SA's located a green sweatshirt with a red logo on it on the rear driver floorboard. This sweatshirt is consistent with the sweatshirt the male was wearing from Tanger Outlet Mall surveillance video.



24.     Between the front passenger floorboard, SA's located a box of blue disposable gloves. The gloves are consistent with the blue gloves the male was wearing in the NCPD surveillance video.



25.     On the passenger seat was a sticker that said, "Gasoline & Fire Never Mix". These stickers are commonly located on gasoline cans. From my training and experience, gasoline is commonly used when manufacturing an incendiary device due to it being highly flammable.



26.     In the rear cargo area, SA's located a brown pair of size 13 boots (photograph on the left). **CLARKE-POUNDER** was also wearing a similar pair of black boots, which were

collected (photograph on the right). Due to the rivets on the boots, they are consistent with the boots the male was wearing on the NCPD surveillance video.

 

27.  On the passenger floorboard, SA's located a receipt from Aldi. The receipt showed only one (1) item was purchased, which was Holland Lager 1839. This brand of beer was the same brand as the shards of beer bottles collected at the incident location by SA Black.



28.  SAs then executed the search warrant on the residence. SAs searched the bedroom of **CLARKE-POUNDER**, which was identified by one of his roommate and multiple items

Page 14 of 16

establishing **CLARKE-POUNDER** occupied it. Within the bedroom, SAs located a purple composition notebook on a desk next to the bed. The notebook contained a three (3) page handwritten statement, which asserted anti-government believes and statements opposed to the Department of Government Efficiency ("DOGE").[4] The statement made mention of sending a message based on these beliefs and was signed with the initials "DC." It should be noted, SAs also located a handwritten note inside of **CLARKE-POUNDER**'s wallet which was on his person. That handwritten note asserted similar beliefs to the statement located in the composition notebook.

29.  **CLARKE-POUNDER** was arrested and then transported to Al Cannon Detention Center where he was booked for charge(s) related to this investigation.

## CONCLUSION

30.  Based on the foregoing facts and circumstances, I assert that there is probable cause to believe that Daniel Brendan Kurt **CLARKE-POUNDER** has violated 18 U.S.C. § 844(i) in that he committed the arson of several Tesla charging stations, which are property in interstate commerce.

31.  Accordingly, I respectfully request that this Court issue a Criminal Complaint and Arrest Warrant for Daniel Brendan Kurt **CLARKE-POUNDER**.

32.  I affirm under penalty of perjury that the foregoing affidavit is true and accurate to the best of his knowledge.

Assistant United States Attorney Cole Shannon has reviewed this affidavit.

---

[4] DOGE is an initiative of the President to promote government productivity and efficiency. One of the key individuals associated with DOGE is the President's Senior Advisor Elon Musk, who is also the chief executive officer of Tesla, Inc., the manufacture of the charging stations involved in this incident.

JORDAN GRIFFIN  Digitally signed by JORDAN GRIFFIN
Date: 2025.03.14 12:38:33 -04'00'

Jordan Griffin, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

SWORN TO ME VIA TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS AND SIGNED BY ME PURSUANT TO FED. R. CRIM. P. 4.1 AND 4(d) OR 41(d)(3), AS APPLICABLE.

This 14th day of March 2025 in Charleston, South Carolina

_____
The Honorable Mary Gordon Baker
UNITED STATES MAGISTRATE JUDGE